**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

WILLIE MCCRARY and CHARLENE )
MCCRARY, )
                                                  )    Case No. 13-CV-507-JED-PJC
                    Plaintiffs, )
                                                 )
v. )
                                                 )
COUNTRY MUTUAL INSURANCE )
COMPANY d/b/a COUNTRY FINANCIAL, )
                                                 )
                    Defendant. )

**OPINION AND ORDER**

The Court has for its consideration the Motion to Remand (Doc. 8) filed by plaintiffs, who seek to remand this action to the Tulsa County District Court, where it was commenced. Defendant filed a response (Doc. 10).

**I.    Background**

Plaintiffs filed their Petition (*see* Doc. 2-1) on June 26, 2013 in Tulsa County District Court. In their Petition, they allege that they were insured under a homeowners policy issued by the defendant, and they suffered a loss which is insured under that policy, but the defendant failed, refused and neglected to pay their claim for loss. As a result, they allege a breach of contract of insurance and a breach of the obligation of good faith and fair dealing. (*Id.* at 2). The Petition requests actual damages "in excess of $10,000" and punitive damages "in excess of $10,000," plus "interest, costs, attorneys' fees and such other and further relief to which they are deemed entitled." (*Id.*).

Defendant removed the case to this Court by filing the Notice of Removal (Doc. 2) on August 9, 2013, within 30 days of service of the Petition. As the basis for subject matter jurisdiction, defendant argues that the parties are diverse (plaintiffs are Oklahoma residents and

defendant is an Illinois corporation) and that "it can be ascertained" that plaintiffs' "claim for relief is an amount in excess of $75,000." (*Id.* at 3). According to defendant's Notice of Removal, plaintiffs made a claim under their homeowners policy for a plumbing leak under the floor slab of the home. (*Id.* at 2). The Notice of Removal indicates that the requisite amount in controversy (in excess of $75,000) is met because (1) plaintiffs seek actual damages in excess of $10,000, (2) plaintiffs seek punitive damages in excess of $10,000, (3) plaintiffs submitted an invoice for floor repairs (totaling $4195), and (4) an engineering report has recommended three piers be installed under the foundation in the vicinity of the west wall of the master bedroom addition of plaintiffs' home. (*Id.*).

Plaintiffs seek remand, asserting that defendant has not presented anything other than mere conjecture or speculation to support defendant's claim of the requisite amount in controversy. As plaintiffs note, the engineering report does not indicate or estimate the cost of any piers, and the invoice submitted to defendant was only $4195. In response to the motion to remand, defendant cites the categories of damages set forth in the Notice of Removal (described above) and additionally argues that the homeowners policy limit is $300,000, and plaintiffs' claims, if successful, would be attorney fee-bearing claims under Okla. Stat. tit. 36, § 3629(B).

**II.    Discussion**

A case must be remanded to state court if, at any time before final judgment, it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Defendant removed this action on the basis of diversity jurisdiction. Diversity jurisdiction requires diversity of citizenship and an amount in controversy exceeding $75,000 (exclusive of interest and costs). 28 U.S.C. § 1332(a). In order to effect proper removal based upon diversity jurisdiction, "[b]oth the requisite amount in controversy and the existence of diversity must be affirmatively established

on the face of either the petition or the removal notice." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). In addition, the Tenth Circuit has provided guidance to district courts regarding the analysis to be undertaken in determining the amount in controversy:

> The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the "*underlying facts* supporting [the] assertion that the amount in controversy exceeds [$75,000]."

*Id.* (emphasis in original) (citations omitted). Where the face of the initial pleading does not affirmatively establish the requisite amount in controversy, *Laughlin* requires that the removing defendant set forth in the notice of removal the facts supporting defendant's allegation that the amount in controversy exceeds $75,000. *See id.*

In *McPhail v. Deere & Co.*, 529 F.3d 947 (10th Cir. 2008), the Tenth Circuit clarified the standards applicable to the defendant's burden of showing the requisite amount in controversy to support removal. The court there noted the inequity of permitting plaintiffs to obtain federal jurisdiction on a simple allegation of a dollar amount, while requiring that defendants meet a higher burden to prove the amount in controversy. 529 F.3d at 953-54. The court accordingly concluded that the defendant has the burden of establishing the jurisdictional *facts* by a preponderance of the evidence, rather than proving jurisdiction itself by a preponderance of the evidence: "It is only the jurisdictional facts that must be proven by a preponderance of the evidence – not the legal conclusion that the statutory threshold amount is in controversy." *Id.* at 955. Thus, a removing defendant "must . . . prove those jurisdictional facts by a preponderance of the evidence," and once it does so, the defendant is entitled to stay in federal court unless it is "legally certain" that the recovery will be less than the jurisdictional amount in controversy. *Id.* (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)). Stated

another way, "the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that [in excess of] $75,000 was in play." *Id.*; *see also id.* ("we now consider whether [defendant] has proven the facts necessary to supports [sic] its assertion that this case *may* involve more than $75,000.")

"Still, in the absence of an explicit demand for more than $75,000, the defendants must show how much is in controversy through other means." *Id.* These means may include reliance on an estimate of the potential damages from the allegations in the plaintiff's pleading, a plaintiff's proposed settlement amount, discussions between counsel, discovery responses obtained in state court before removal was filed, or other evidence, such as "affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *Id.* at 955-56 (quoting *Meridian*, 441 F.3d at 541-42).

After the courts' decisions in *McPhail* and *Meridian*, the Federal Courts Jurisdiction and Venue Clarification Act of 2011 amended 28 U.S.C. § 1446(c)(2) to expressly govern the burden of proof in the removal context. The statute now provides:

> (2) If removal of a civil action is sought on the basis of [diversity] jurisdiction . . ., the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks-- (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) *if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)*.

28 U.S.C. § 1446(c)(2) (emphasis added).

4

As noted, in response to the Motion to Remand, defendant relied upon the information from the Notice of Removal, which established that plaintiffs seek actual damages in excess of $10,000 and punitive damages in excess of $10,000, plaintiffs submitted the floor repair invoice for $4195, and an engineering report recommends installation of three foundation piers (at unknown cost). In addition, defendants added arguments that the policy limit of the plaintiffs' homeowners policy is $300,000, and plaintiffs' allegations in the Petition would "arguably entitle them to statutory attorney fees under Okla. Stat. tit. 36, § 3629(B)." (Doc. 10 at 4-5).

In support of the request to include the limit of the insurance policy in the calculation of amount in controversy, defendant cites *State Farm Mut. Auto Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1993). In that case, the evidence showed that the insured submitted a claim for the policy limit (which was exactly $50,000) after the insured sustained severe head injuries. The Tenth Circuit determined that the district court did *not* have subject matter jurisdiction because the "*maximum* 'amount in controversy' is the maximum limit of the insurer's liability under the policy," and thus the insurer had not shown that the amount in controversy was at issue. 149 F.3d at 1271. *Narvaez* is distinguishable from the facts here. Unlike *Narvaez*, there is no indication in this case that plaintiffs sought the policy limit of their homeowners insurance policy, that the policy limit is otherwise in play, or that there was a total loss of the home that would justify any claim for policy limits. This Court does not view *Narvaez* as having established a bright-line rule that policy limits must be considered in the amount in controversy calculation in every case that implicates any insurance policy, and the Court declines to establish such a rule here, where the only evidence before the Court reflects a plumbing leak that plaintiffs claim caused an unspecified amount of damage to flooring and may require some foundation

repairs. Defendant has not submitted any affidavits or evidence "about how much it would cost" to install the recommended piers, *see McPhail*, 441 F.3d 955-56.

Defendant also cites responses to requests for admission that were provided by plaintiffs after defendant's removal to this Court. Those requests for admission and the responses are:

> REQUEST OF ADMISSION NO. 1: Admit that the amount being claimed, which is the subject of this litigation, exclusive of interests and costs, exceeds $75,000.00.
>
> RESPONSE OF ADMISSION NO. 1: Denied, not proper discovery.
>
> REQUEST OF ADMISSION NO. 2: Admit that the amount being claimed, which is the subject of this litigation, exclusive of interest and costs, does <u>not</u> exceed $75,000.00.
>
> RESPONSE OF ADMISSION NO. 2: Denied, not proper discovery.

(Doc. 10-3 at 1-2). The Court understands the defendant's concerns about these discovery responses. Both Oklahoma procedure (applicable at the time the discovery requests were served) and federal procedure require a party to provide information regarding damages. *See, e.g.*, Okla. Stat. tit. 12, § 3226(A)(2) (providing that "a party, without awaiting a discovery request, *shall* provide to other parties a computation of any category of damages claimed . . ."); Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "a computation of each category of damages claimed by the disclosing party" by way of initial disclosure). The requests for admissions are also consistent with this Court's Local Rules, which provide that one method for a defendant to establish the amount in controversy is citation to a plaintiff's response to a request for admission regarding the amount in controversy. *See* LCvR 81.3(a)(2).

Courts have considered a plaintiff's failure to adequately respond to discovery responses when analyzing removal to federal court. *See, e.g.*, *Torres v. Cintas Corp.*, 08-CV-185-CVE, 2008 WL 2410133 (N.D. Okla. Jun. 19, 2008); *Wilbanks v. North American Coal Corp.*, 334 F.

6

Supp. 2d 921 (S.D. Miss. 2004) (citing prior cases); *Schwenk v. Cobra Mfg. Co.*, 322 F.Supp.2d 676, 680 (E.D. Va. 2004). However, a plaintiff's failure to respond to discovery or stipulate regarding the amount in controversy does not, alone, satisfy the amount in controversy and "[t]he law is clear that defendants must still establish the amount in controversy . . . even if plaintiff fails to provide adequate discovery responses." *Torres*, 2008 WL 2410133 at *4; *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (plaintiff's refusal to stipulate to amount in controversy, alone, does not establish amount in controversy requirement).

In *Torres*, the Honorable Claire V. Eagan relied in part upon the plaintiff's refusal to answer discovery responses. That case involved similar discovery responses, by the same attorney who represents the plaintiffs in this case and who signed the discovery responses objecting to the requests for admission relating to the amount in controversy. *See Torres*, at *1. In denying the plaintiff's motion to remand the case, Judge Eagan stated in part:

> The Court finds that defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. [The plaintiff's] deposition testimony shows that [the decedent] would likely have earned more than $75,000 during his life and [his] earning capacity is an element of damages under [the Oklahoma wrongful death statute]. . . . *The Court also finds that plaintiff's refusal to respond to discovery concerning the amount in controversy is a relevant factor in the Court's analysis*. If plaintiff's damages did not exceed $75,000, she should have responded to a request for admission on this issue and clearly stated her position. . . . Although plaintiff's refusal to respond to discovery requests is not an independent basis to establish the amount in controversy, *the Court finds that it is a relevant factor in this case*.

*Id.* at 4 (emphasis added). Similarly, in *Stiles v. Chattem, Inc.*, 10-CV-598-CVE, 2011 WL 90321 (N.D. Okla. Jan. 11, 2011), Judge Eagan denied a motion to remand where the same law firm stated that requests for admission relating to the amount in controversy were "not discoverable." In *Stiles*, plaintiffs initially refused to respond to the discovery, but later amended their responses to admit that they "could not fathom" the amounts sought being less than

7

$75,000. 2011 WL 90321 at *6. There, despite initially refusing to respond to the amount in controversy discovery, the plaintiffs argued that the defendant's notice of removal (which was filed more than 30 days after service but less than 30 days after receipt of the amended discovery responses) was untimely. Judge Eagan there found that, "[i]f plaintiff's damages exceeded $75,000, they should have responded to the requests for admission and clearly stated their position; that they refused to do so severely undermines their current argument that the jurisdictional amount was clear from the face of the petition." *Id.*

The type of gamesmanship involved in these cases places a defendant in a difficult position of the type noted in *McPhail*. *See* 529 F.3d at 953-54 (describing the disparity between requirements for plaintiffs and defendants to establish federal jurisdiction as applied in pre-*McPhail* removal cases and stating, "Misunderstood, this system is liable to serious abuse."). Thus, following service of the initial pleading, if the defendant believes the amount in controversy may exceed the $75,000 threshold for diversity jurisdiction, the defendant must decide whether to (1) file a notice of removal within 30 days of service, based upon the existing facts the defendant believes to establish the amount in controversy or (2) serve discovery, engage in lengthy, potentially expensive litigation to obtain basic answers regarding damages, and then file a notice of removal within 30 days after such discovery is finally obtained. *See* 28 U.S.C. § 1446(b); *see also McPhail*, 529 F.3d at 953-54. As in *Stiles*, a defendant who chooses the latter path -- waiting to file the notice of removal after several months of wrangling with plaintiff over very basic damages discovery in state court until plaintiff's counsel finally admits that he "could not fathom" damages being less than $75,000 -- faces the potential that the plaintiff will then argue that the amount in controversy was obvious from the face of the pleading such that the defendant's notice of removal was filed too late. *Stiles*, 2011 WL 09321, *6. Here, to avoid the

expense and risk of the removal being found untimely, defendant elected to file the Notice of Removal within 30 days of service of the plaintiffs' Petition, based upon the facts that defendant then had available and which defendant believes to reflect that the amount in controversy may exceed $75,000. In response, plaintiffs do not argue that the amount in controversy is less than the required jurisdictional amount, but only that defendant has failed to prove the amount.

Despite the foregoing, the Court does not have enough before it at this time to find, "by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in [28 U.S.C.] section 1332(a)," as is required by 28 U.S.C. § 1446(c)(2). At this point, the amounts add up as follows: (1) some unspecified amount in excess of $20,000 in actual and punitive damages; (2) $4195 for repairs as invoiced; (3) attorneys' fees in an unknown amount; and (3) the unknown cost of foundation piers. Unlike the plaintiffs' claims in *McPhail*, *Stiles* and *Torres*, the plaintiffs here are not claiming damages for "severe bodily injuries," "permanent and progressive injury," "wrongful death" (*McPhail*, 529 F.3d at 957), "severe, grievous and painful injuries, [which] resulted in death," medical expenses, pain and suffering, loss of companionship, and burial expenses (*Stiles*, 2011 WL 90321, *1), or damages for wrongful death, including lost earning capacity of 20 years at $25,000 per year (*Torres*, 2008 WL 2510133, **3-4). At this point, all that is before the Court is evidence that plaintiffs had a leak under their home which they claim required serious repairs and perhaps caused other damages, but because plaintiffs have refused to indicate whether they do or do not seek the jurisdictional amount of damages, it is unclear whether the amount is satisfied.

In *McPhail*, the Tenth Circuit recognized that the federal discovery process may be utilized by a defendant to support its opposition to a plaintiff's motion to remand:

> We also note that to the extent that a defendant must rely on the federal discovery process to produce this evidence (perhaps because there was no time to do so in

> state court) he may ask the court to wait to rule on the remand motion until limited discovery has been completed . . . although we do not decide under what circumstances a district court would abuse its discretion by refusing such a request.

529 F.3d at 954 (citation omitted). Here, due to the plaintiffs' refusal to directly answer straightforward discovery regarding the amount in controversy, the Court will exercise the discretion described in *McPhail* to defer a ruling on the Motion to Remand to permit time to complete discovery regarding the amount in controversy.

IT IS THEREFORE ORDERED THAT:

1. The plaintiffs shall provide the initial disclosures described in Fed. R. Civ. P. 26(a)(1)(A)(iii) by **November 22, 2013**;

2. After first conferring as required by the Local Rules and Federal Rules of Civil Procedure, the defendant may file any desired discovery-related motions under Fed. R. Civ. P. 36(a)(6) or 37(a) that relate specifically to the amount in controversy in this case. Any such motions shall be filed by **December 6, 2013**;

3. Defendant shall amend the Notice of Removal within 10 days of receipt of any additional information supporting the requisite amount in controversy for purposes of diversity jurisdiction. Alternatively, if it appears to defendant that the amount in controversy does not exceed $75,000, defendant shall promptly notify the Court of same.

IT IS SO ORDERED this 11th day of November, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE