**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WILLIE MCCRARY and CHARLENE MCCRARY, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 13-CV-507-JED-PJC |
| v. | ) ) | |
| COUNTRY MUTUAL INSURANCE COMPANY d/b/a COUNTRY FINANCIAL, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**I.     Background**

Plaintiffs were insured under a homeowners' policy issued by the defendant, Country Mutual Insurance Company (CMIC) between September 15, 2005 and December 23, 2012.  In 2012 and 2013, plaintiffs' home was damaged by sewer drain line failure under the slab of the plaintiffs' home.  The full extent of the damage and sewer line issue was discovered and reported to CMIC over the course of months, as will be summarized below.

*First notice of drain line problem – claim number 165-0021179*

The plaintiffs' first notice of the issues came in June 2012, when they noticed that the floor slab had settled in the bedroom area of the home.  A foundation repair company advised plaintiffs that there was a water leak under the slab of their home.  A plumber then discovered a leak in the drain line under the slab, and plaintiffs reported the claim to CMIC on July 19, 2012. The loss was assigned claim number 165-0021179.  A CMIC adjuster, Corey Carr, inspected the home the following week.  Carr noted the water leak in the drain line and scoped the areas of concern for access to the plumbing.

The plumber ran a cable camera through the kitchen sink and washing machine drain lines and found a "belly and breach" in the drain line, but could not run the cable camera beyond the breach.  The plumber contacted Carr and indicated that to determine the extent of the leak, the floor would need to be demolished.  Carr notified plaintiffs that the plumber found the source of the leak and would be back to start accessing the drain line.  The plumber submitted an estimate to CMIC for demolition of the floor and removal and replacement of pipes.  On August 16, 2012, CMIC issued a check to plaintiffs in the amount of $5,864.61, which included $4,275.00 for access to the drain line.  The same date, CMIC transmitted a letter to the plaintiffs denying the claim in part pursuant to policy exclusion numbers 3 and 19 and indicating that "resulting damage from the water leak is covered under this policy (access)" but that "the repair to the plumbing system and [foundation] settlement is excluded." (Doc. 32-1).  CMIC closed claim number 165-0021179 on August 17, 2012.

*Leak under kitchen – claim number 165-0021413*

On October 4, 2012, plaintiffs notified Carr of an additional location of leaking drain line under the kitchen of their home.  By letter dated that same day, Carr notified plaintiffs that the "additional leak found on the drain line on your home . . . is considered a separate issue" for which the plaintiffs would "need to file a separate claim."  (Doc. 32-2).  As with the prior drain line problem, CMIC cited policy exclusions 3 and 19 and indicated that "the resulting damage from the water leak is covered under [the] policy" but "the repair to the plumbing system and any settlement of the home is excluded."  (*Id.*).  A separate claim was opened and was assigned claim number 165-0021413.  That claim was investigated by Carr, who inspected the home with another plumbing company and discovered a leak in the kitchen area and an additional leak in the den of the home.  On October 30, 2012, CMIC corresponded with plaintiffs by letter, citing

exclusions 19(a) and (b) as excluding coverage for the plumbing repairs. (Doc. 32-4). As before, CMIC indicated that "resulting damage from the water leak is covered under the policy." (*Id*.). CMIC issued a check to plaintiffs in the amount of $4,665.53, covering costs of plumbing access, less plaintiffs' $1,000.00 deductible. The claim was then closed on October 30, 2012.

*Leak under den – claim number 165-0021414*

Although the additional drain line leak under the den was discovered at the same time as the kitchen area leak, CMIC assigned yet another claim number, 165-0021414, to the den area. The plumbing company submitted invoices to CMIC for $4,780.00 for access and repairs to the drain pipe and for "unforeseen additional charges" in the amount of $1,485.00. On October 26, 2012, CMIC sent the plaintiffs another partial denial letter, stating that the leak under the den is a separate loss as the "two leaks are in separate location [sic] in your home and are not related." (Doc. 32-3). Once again, CMIC asserted that the plumbing repair would not be covered. (*Id.*). CMIC also denied plaintiffs' request for coverage to repaint the interior of the home, which CMIC indicated would be excluded under policy exclusion 19. (*Id.*). On the same day, CMIC issued a check in the amount of $1,060.00, to cover plumbing access, less plaintiffs' $1,000.00 policy deductible. Claim number 165-0021414 was closed on October 30, 2012.

*Termination of policy coverage*

CMIC terminated plaintiffs' policy coverage on December 23, 2013, purportedly because of "claims frequency." (*See* Doc. 32-10; *see also* Doc. 32-5). CMIC listed five claims between December 10, 2007 and October 18, 2012. Of those five claims, three of them were the claims reported in 2012 relating to the drain line failure, one was a 2007 claim for which CMIC paid $1,531.50 for loss related to "Collapse Snow/Ice," and one was a 2008 claim on which CMIC paid zero ($0.00). (*See* Doc. 32-5). Another CMIC record dated October 26, 2012,

3

before the termination of coverage, stated CMIC's concerns both about "claims frequency" and "physical condition," which included concerns about the failure of the home's "drain line system":

> Three water claims within the last four months. . . . The home is older and the drain line system is failing in the home.  Plumber has also noted additional sewer line issues outside the home.  At some point in time an addition was added onto the home.  The home appears to have foundation issues with the addition.  Highly recommend that loss control or underwriting inspect the property or review this account.  If the sewer/drain line issue is not addressed outside, this could be an additional potential backup into the home.

(Doc. 32-9 at 1-2).

*Continuing drain line problem after policy termination – claim number 165-0021961*

On May 22, 2013, plaintiffs reported a bedroom-area drain line leak, which they requested be treated as related to the prior claims.  CMIC assigned claim number 165-0021961. The following day, Carr and a plumbing company inspected the home.  The plumbing company located the old cleanout valve "that was left open when room addition was built" in 2006.  (Doc. 28-31).  The invoice provided an estimate for removing the concrete slab to install a "new drain system throughout the whole house" and to "[r]eplace concrete in all areas that were removed." (*Id.*).  On the day of the inspection, Carr wrote an email to James Carlson, in-house claims counsel for CMIC.  (Doc. 32-11).  In his email, Carr stated:

> [Plaintiffs have] three prior claims for a sewer line drain repair (access only was considered).  They filed another claim for the drain line again.  A plumber found this additional leak in another area (bedroom were [sic] the home was added onto several years back).  This plumber has advised that he feels all the drain lines are rotten through the home and he plans on replacing all of it.  On the prior claims and different plumbers we addressed the leaks in different areas of the home per claim.  Since these prior claims.  [sic]  The insured's [sic] policy was not reinstated on 12/23/12.  My understanding from the financial representative is due to not paying bill on time and the company did not reinstate the policy. . . .  I advised [Mrs. McCrary] of coverage issues.

(*Id.* at 3).

4

In response to Carr's email, Mr. Carlson asked "Has it been more than two years since the last claim?" (*Id.* at 2). Carr replied "No" and gave information about each of the claim numbers CMIC had assigned to plaintiff's prior sewer drain issues beginning June 28, 2012. At the end of his reply, Carr noted that "[t]he damages will most likely reach over 30-40k (plumbing access and damages gaining access)." (*Id.*). Carlson responded:

> "Absent prejudice they have up to two years to present us evidence of loss. So we need to determine if the new damage is related to the older claims or not. If not deny them. If so pay them."

(*Id.* at 1). Carr forwarded Carlson's direction to Carr's supervisor, Rick Lowe, with the notation that Carr "advised [that] the coverage decision would be up to our department." (*Id.*). At his deposition, Carr testified that Lowe made the decision to deny coverage for the 2013 claim. (Doc. 32-13 at 6-7). On June 16, 2013, Carr sent a "NOTICE OF DENIAL" letter to plaintiffs, stating that CMIC "determined the loss occurred outside of the coverage period" of their policy, which was terminated on December 23, 2012. (Doc. 28-32).

*The policy exclusions cited by CMIC*

CMIC has moved for summary judgment, citing multiple policy exclusions. The "Earth Movement" exclusion provided that CMIC does "not insure for loss caused directly or indirectly by . . . earth movement of any type, including but not limited to: . . . c. Subsidence or sinkhole; or d. Any other earth movement including earth sinking, rising, shifting, creeping, expanding, bulging, cracking, settling, or contracting of the earth." (Doc. 28-2 at 27, Exclusion No. 2).

As to "Water Damage," exclusion number 3 provided that CMIC does "not insure for loss caused directly or indirectly by . . . Water Damage [which] means loss from:

> a.      Flood; surface water (including water flowing naturally on or near the surface and water whose flow is artificially altered); waves; tidal water; overflow of a body of water; storm surge; break, breach or leak of a levee, dam or canal; or spray from any of these;, whether or not driven by wind;

5

b.      Water or water-borne material, including sewage, which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c.      Water or water-borne material, regardless of its source, below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(*Id.* at 27-28, Exclusion No. 3).

Under exclusion number 16, the policy excluded coverage for any loss caused by

"Seepage or Leakage," which is defined as:

Continuous or repeated seepage or leakage of water or steam from a:

a.      Heating, air conditioning or automatic fire protective sprinkler system;

b.      Household appliance; or

c.      Plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

"We" also do not cover loss to the system or appliance from which the water or steam escaped.

(*Id.* at 29, Exclusion No. 16).

Policy exclusion number 19 excluded coverage for any loss caused by any of the

following:

a.      Wear and tear, marring, deterioration;

b.      Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

c.      Smog, rust or other corrosion; [and] . . .

f.      Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings. . . .

(*Id.* at 29-30, Exclusion No. 19a, b, c, f).

## II.      Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.  The court may not weigh the evidence and may not credit the evidence of the party seeking summary judgment and ignore evidence offered by the non-movant. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

## III.     Discussion

### A.      The Policy Excluded Damages Caused by the Faulty Sewer Drain Line

Both parties cite Oklahoma law as applicable to the policy and plaintiffs' claims in this case.  "Oklahoma law involving the interpretation of insurance contracts is well settled." *Porter v. Oklahoma Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014).  "When policy provisions are clear, consistent, and unambiguous, [Oklahoma courts] look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent." *Id.* "When the language is susceptible to two constructions before applying the rules of construction, the policy is ambiguous.  However, 'neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then

7

construe an ambiguity so as to import a [more] favorable consideration to either party than that expressed in the contract.'"  *Id.* (quoting *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376-77 (Okla. 1991)).  The courts "will not impose [insurance] coverage if it is clear from the policy language that loss from a particular risk is not covered."  *Porter*, 330 P.3d at 516.

Plaintiffs argue that CMIC should be estopped from relying upon the "Earth Movement" or "Seepage or Leakage" exclusions, because CMIC did not rely on those exclusions in its initial claim denial letters.  Courts in this Circuit have declined to prohibit an insurer from enforcing a policy exclusion that it did not cite as the basis for initial claim denial.  For example, in *Cust-O-Fab Serv. Co., LLC v. Admiral Ins. Co.*, 158 F. App'x 123, 129-30 (10th Cir. 2005) (unpublished), the district court had rejected the plaintiff insured's estoppel argument and found the insurer's "initial letter of denial did not purport to provide the only possible reason for exclusion, because the letter clearly stated that 'the acts or positions described herein [should not] be construed in any way as a waiver or an estoppel with respect to other matters of which Admiral . . . [has not] raised to date.'"  On appeal, the Tenth Circuit agreed:

> [W]e cannot conclude the district court abused its discretion by allowing Admiral to assert this defense in a motion for summary judgment. First, Cust-O-Fab can make no showing that it was prejudiced by responding to the defense at the summary judgment stage. The coverage of the three-page EBL Endorsement was at issue from the beginning of the litigation, and Cust-O-Fab cannot argue it was surprised by Admiral's reliance on a provision that so clearly goes to the facts alleged in the complaint for declaratory judgment. Second, the district court found that Admiral had not waived any Policy defenses in its denial letter. . . . Accordingly, we hold that the district court did not abuse its discretion by allowing Admiral to assert the contract exclusion at the summary judgment stage of the case.

*Id.* at 129-30.[1]

---

[1]     In this Circuit, unpublished decisions are not precedential, but may be cited for their persuasive value. *See* 10th Cir. R. 32.1.

As in *Cust-O-Fab*, each of CMIC's letters referencing policy exclusions also contained language reserving all defenses and exclusions.  That language provided:

> "This enumeration of defenses and exclusions under the policy is not meant to be, nor is meant to be construed by you, as a waiver of any other terms, provisions, conditions, definitions or exclusions, which may now or hereafter apply to the insurance afforded under this policy."

(Doc. 32-1 at 2, 32-2 at 2, 32-3 at 3, 32-4 at 2).  CMIC is not estopped from asserting the additional policy exclusions cited in its summary judgment motion.

Plaintiffs have not presented any evidence or authorities to dispute that much of the damage to their home – including foundation, floor, and wall damage – was the result of settling, which is not covered by the plain, unambiguous terms of exclusion number 19(g).  Under 19(g), the policy excludes coverage for any "loss caused directly or indirectly by . . . [s]ettling, shrinking, bulging or expansion, including resultant cracking of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings."  (Doc. 28-2 at 30).  *See Davis-Travis v. State Farm Fire & Cas. Co.*, 336 F. App'x 770, 773-74 (10th Cir. 2009) (unpublished) (affirming summary judgment based upon earth movement exclusion, after finding the provision unambiguously excluded damage caused when "the earth supporting the slab expanded and contracted, as a result of water, from whatever source, and caused settlement damage.").

Plaintiffs have also not provided any argument or evidence that the "Seepage or Leakage" exclusion is inapplicable, except a single sentence in their response brief in which they assert that "the leakage was not water or steam, but sewage."  (Doc. 32 at 8).  A similar argument was rejected in *Ellis v. State Farm Fire & Cas. Co.*, 322 F. App'x 594 (10th Cir. 2009) (unpublished).  *Ellis* involved a policy provision materially identical to CMIC's "continuous or repeated seepage or leakage" provision.  The Court in *Ellis* found that the provision excluded coverage for foundation damage resulting from a broken and leaking drain pipe under the

foundation of the insured's home.   *Id.* at 596-97.   After the district court granted summary judgment to the insurance company under the seepage or leakage exclusion, the plaintiff appealed, arguing in part that the exclusion referred to seepage or leakage of "water or steam," not to sewage.

In affirming the district court's determination that the seepage or leakage exclusion applied to the foundation damage caused by the drain pipe, the Tenth Circuit in *Ellis* stated:

> Turning to [plaintiff's] argument that the policy's terms "water [and] steam" do not apply to a drain or sewer line, clearly the drain or sewer line contained water. The fact that it also contained waste matter does not alter the fact that it was water that carried away the waste.   "Sewage" is defined as "refuse liquids or waste matter usually carried off by sewers."   *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/sewage.   Moreover, the policy excludes leakage or seepage from a "plumbing system, including from . . . [any] plumbing fixture."   A plumbing system includes a drain or sewer line. Consequently, we agree with the district court that the policy language is not ambiguous and that the exclusion applies to the drain or sewage line at issue here.

*Ellis*, 322 F. App'x at 597 (record citations omitted).

The water damage exclusion also unambiguously excludes coverage for the damage to plaintiffs' home.   In pertinent part, it provides that CMIC does "not insure for loss caused directly or indirectly by . . . Water or water-borne material, including sewage, which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or  Water or water-borne material, regardless of its source, below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure. . . ."   (Doc. 28-2 at 27-28). Under that policy section, water-borne material expressly includes "sewage," and any "water-borne material, *regardless of its source*, below the surface of the ground."   (*See id.*) (emphasis added).   It is undisputed here that the sewer line under the home was the cause of the loss, and that policy exclusion accordingly also applies to the damage to plaintiffs' home.

Accordingly, the summary judgment motion is granted as to damages for repairs to the faulty drain line system and foundation, ceiling and floor cracks, settling, and the like. However, as will be discussed below, the summary judgment motion will be denied as to the costs of "access" and CMIC's requirement that plaintiffs file multiple claims.

**B.     Issues of Fact Remain on Plaintiffs' Contract and Bad Faith Claims**

Although the losses to plaintiffs' home were not covered under the CMIC policy in light of the exclusions discussed above, the plaintiffs have presented evidence of genuine disputes of material fact regarding two related issues: (1) whether the multiple claims relating to the defective sewer line under their home should have been treated as a single "occurrence" under the policy, such that plaintiffs should not have been either required to file separate claims or assessed multiple deductibles; and (2) whether CMIC improperly denied coverage for access – that is, the cost of gaining access and the damages from such access – in relation to the additional damage found under the slab and claimed in May 2013 after the policy was discontinued. In its reply brief, CMIC "denies that the Policy provides coverage for access to the drain lines." (Doc. 33 at 5-6, ¶ 31). However, the evidence in this case establishes the existence of a factual dispute on the issue of coverage for risk of direct physical loss as a result of access. (*See* Doc. 32-13 at 2 of 7 [referencing policy provision for "risk of direct physical loss" as "provid[ing] coverage for access"]). CMIC's adjuster, Corey Carr, repeatedly referenced policy coverage for access, and CMIC actually paid for the damage caused to plaintiffs' home as a result of gaining access to the drain lines. (*See* Doc. 32-1 ["the resulting damage from the water leak is covered under this policy (access)"]; Doc. 32-2 [same]; Doc. 32-4 [same]; Doc. 32-6 [referring to three claims as "a result of the leak access on the sewer drain line in your home"]).

CMIC's summary judgment brief also supports plaintiffs' claim that the policy covered the costs of accessing the drain line.  (*See, e.g.,* Doc. 28 at 11, ¶ 10 [Carr dealt directly with plumber regarding access]; *id.* at ¶ 13 [CMIC issued a check to the plaintiffs that included "$4,275.00 for access to the drain line"], *id.* at ¶¶ 15-16 [Carr "advis[ed] that the costs for access to the drain line were covered under the Policy"]; *id.* at ¶ 23 [CMIC issued a check for access]; *id.* at 16 of 31 [arguing only that "loss for plumbing repairs and settlement is excluded"]). Indeed, CMIC cites its undisputed fact statement for the proposition that "[e]ach claim was investigated by CMIC, and with the exception of Claim No. 165-00321961 which was denied because the loss occurred outside the coverage period, each time CMIC paid for access to the drain line."  (Doc. 28 at 20 of 31; *see also id.* at 29 of 31).

CMIC representatives' internal communications further support plaintiffs' argument that coverage for access should have been provided for the May 2013 claim. (*See* Doc. 32-11 at 2-3 [Carr notes that "access only was considered" as part of the three prior claims and states his concern that "damages will most likely reach over 30-40k (plumbing access and damages gaining access)."]).  Despite Carr's extensive summary of the facts in his emails to CMIC Claims Attorney James Carlson, Carlson responded very directly: "Absent prejudice they have up to two years to present us evidence of loss.  So we need to determine if the new damage is related to the older claims or not.  If not deny them. *If so pay them*."  (*Id.* at 1) (emphasis added).

Construed in favor of plaintiffs as is required at this stage of the litigation, the foregoing evidence is also consistent with plaintiffs' arguments that the drain line failure, the full extent of which was discovered piecemeal over the course of less than a year, was a single "occurrence" such that multiple claims should not have been required and the May 2013 claim should have been considered "related to the older claims" and, thus, covered.  CMIC took the position with

the plaintiffs that the leaks were "in separate location [sic] of [plaintiffs'] home and are not related" such that separate claims would be required. (Doc. 32-3 at 2).  However, reasonable inferences from the evidence present an issue of fact as to whether CMIC was actually concerned about the relatedness of the claims and the failure of the entire drain line under the plaintiffs' home even before it terminated the policy coverage on plaintiffs' home.  There is evidence from which it could reasonable be inferred that CMIC terminated policy coverage for plaintiffs' home – not because of its stated reason of "claims frequency" – but because of its concern about the overall failure of the entire drain line and the costs that CMIC would have to cover. "Comments" in the October 26, 2012 "Special Report to Underwriting" referred to the failure of the home's entire "drain line system" and "the sewer/drain line issue."  (Doc. 32-9).  That document also stated that "[t]he home appears to have foundation issues with the addition" that was "added onto the home," and "[h]ighly recommend[ed] that loss control or underwriting inspect the property or review this account."  (*Id.* at 2).

Other arguments by CMIC in its summary judgment brief support plaintiffs' argument that the issues identified in 2013 – which required the expenditure of costs for "access" to the drain line – were part of a single "occurrence" or were "related" to the prior claims for drain line failure.  For example, CMIC argued as follows:

> [T]he undisputed evidence demonstrates that the settlement of the foundation of the property was caused by a plumbing leak.  On September 25, 2012, Ramey performed an inspection of Plaintiffs' property and discovered foundation defects. According to his structural inspection report, Ramey determined that the probable cause of the foundation and floor slab settlement was likely related to the under slab plumbing leak. (Exhibit 13, Joe B. Ramey Report of Structural Inspection, 9/25/12).
>
> In addition, on June 4, 2014 [sic – should be 2013], Ramey performed a re-inspection of Plaintiff's [sic] property.  In his structural re-inspection report, Ramey noted that the plumbing beneath the back room addition of Plaintiffs' home was evaluated and found to be defective.  (Exhibit 36, Joe B. Ramey Report

of Structural Re-Inspection, 6/4/13). Specifically, after the concrete was broken out several of the drain lines were found to be disconnected at the joints. . . . Ramey states "[a]fter this plumbing evaluation, there is no doubt that the structural issues in regard to the floor slab and foundation along that east wall of the original construction is directly related to the plumbing leaks and the loss of soil through the defective drain lines constructed under that room addition."

(Doc. 28 at 19 of 31).

Construed in plaintiffs' favor, the evidence would support an inference that the issues caused by the defective drain line system under the slab of the plaintiffs' home constituted a single "occurrence," which is defined in the policy as "the happening of an event, or series of events closely related in time and nature that give rise to a loss." (Doc. 28-2 at 4-5, ¶ 10.b). Accordingly, summary judgment is inappropriate on plaintiffs' claims for breach of contract and insurance bad faith relating to CMIC's treating each drain line issue as a separate occurrence requiring multiple deductibles and CMIC's denial of coverage for "access" in May 2013.

## IV.    Conclusion

For the foregoing reasons, CMIC's motion for summary judgment (Doc. 28) is **granted in part and denied in part** as set forth above.

IT IS SO ORDERED this 31st day of March, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE